**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| AMERICAN EQUITY INVESTMENT LIFE INSURANCE COMPANY, | |
| Plaintiff, | CIVIL ACTION NO. 1:15-CV-00043 |
| v. | (KANE, J.) (MEHALCHICK, M.J.) |
| ROBERT HOWARD, et al., | |
| Defendants. | |

**REPORT AND RECOMMENDATION**

This is an interpleader action initiated by the filing of a complaint by Plaintiff-Stakeholder American Equity Life Insurance Company ("American Equity") on January 7, 2015. (Doc. 1). The Defendant-Claimants named in this action, Robert Howard and Robert Surfield, have competing claims to annuities contracts purchased from American Equity by the late George and Edna Howard ("the Howards").[1] Presently before the Court is a motion for summary judgment filed by American Equity on March 26, 2015, in which it asks the Court to: (1) grant the interpleader; (2) confirm the sufficiency of the deposit American Equity has placed into the Court's registry; (3) enjoin the Claimants from prosecuting any other proceeding against American Equity related to the annuities contracts; and (4) dismiss it from this case. (Doc. 19). American Equity filed a brief in support of its motion for summary judgment the

---

[1] Robert Howard's brother, Dennis Howard, was also initially named as a Defendant-Claimant in the complaint. (Doc. 1). However, he was dismissed from this proceeding on August 28, 2015 (Doc. 28), after stipulating to release his claims to the annuities contracts (Doc. 27).

same day. (Doc. 20). Neither remaining Claimant has filed a brief in opposition to American Equity's motion for summary judgment, but Robert Surfield has stipulated that he does not oppose the motion. (Doc. 29). Because Robert Howard failed to timely file a brief in opposition, he is also deemed not to oppose American Equity's motion for summary judgment. *See* L.R. 7.6 ("Any party who fails to comply with this rule shall be deemed not to oppose such motion."). Given that the time period for Howard to file a brief in opposition has long passed, this motion is now ripe for disposition.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The undisputed facts are as follows.[2] The Howards purchased a total of five annuity contracts from American Equity between October 2001 and December 2002. (Doc. 19-1, ¶ 9). The Howards terminated three of the five contracts by December 2006, while both of the Howards were still alive. (Doc. 19-1, ¶ 22). The two remaining contracts that were not terminated, Annuity Contract Nos. 179442 and 180110, are the subject of this litigation. (Doc. 19-1, ¶ 36).

George Howard had two sons, Robert and Dennis Howard (the "Howard brothers"). (Doc. 19-1, ¶ 3). Edna Howard had several siblings, including two brothers named Mervin and Harvey McCommon, both of whom are now deceased.[3] (Doc. 19-1, ¶ 6). Edna Howard's niece

---

[2] In addition to not filing a brief in opposition to American Equity's motion for summary judgment, Howard also did not file an opposing statement of material facts. Accordingly, the Court shall proceed on the unopposed statement of facts filed by American Equity (Doc. 19-1). *See* L.R. 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.").

[3] Edna Howard appears not to have had any children of her own. (Doc. 6, ¶ 26).

Sharon (McCommon) Surfield is one of Harvey McCommon's surviving children. (Doc. 19-1, ¶¶ 7-8). Sharon is married to Robert Surfield, one of the Claimants in this action. (Doc. 19-1, ¶ 8).

When Annuity Contract Nos. 179442 and 180110 were first issued, the Howards listed the Howard brothers as the primary beneficiaries of both contracts. (Doc. 19-1, ¶¶ 14-15). However, on or about September 8, 2003, the Howards substituted Harvey and Mervin McCommon as the primary beneficiaries of both contracts. (Doc. 19-1, ¶ 17). The following year, the Howards changed the annuity contracts once more: naming the surviving spouse as the primary beneficiary and both Harvey McCommon and Robert Surfield as contingent beneficiaries of No. 180110; and naming the surviving spouse as the primary beneficiary and Robert Howard as the contingent beneficiary of No. 179442. (Doc. 19-1, ¶¶ 18-19). The Howards did not change the annuity contracts again until December 2007, at which time they amended No. 180110 by naming the Howard brothers as joint contingent beneficiaries while retaining the surviving spouse as the primary beneficiary. (Doc. 19-1, ¶ 24).[4] Therefore, when Edna Howard passed away on January 16, 2012, George Howard was listed as the primary beneficiary for both contracts in his capacity as the surviving spouse. (Doc. 19-1, ¶ 27). Both annuity contracts provided that American Equity would pay the "death proceeds" of each contract, *i.e.* the contract value as of the date of death, to the proper beneficiaries upon the death of either of the Howards. (Doc. 19-1, ¶ 29). However, in circumstances where the beneficiary is a surviving spouse, American Equity permits surviving spouse beneficiaries to

---

[4] Around this time, the Howards also attempted to amend No. 179442 by changing the contingent beneficiary from Robert Howard to Harvey McCommon, but American Equity did not accept the change of beneficiary form. (Doc. 19-1, ¶ 23).

elect "spousal continuation" and continue with the annuity contracts rather than receiving a distribution. (Doc. 19-1, ¶ 30).

On April 24, 2012, just over three months after his wife's death, George Howard executed a new will in the presence of Pennsylvania attorneys John Oszustowicz and Christopher Rice, bequeathing his estate to Robert Surfield.[5] (Doc. 19-1, ¶ 28). Almost exactly a year later, on April 23, 2013, American Equity received a beneficiary claim form via fax sent from the law offices of John Oszustowicz and signed by George Howard. (Doc. 19-1, ¶ 30). On this form, Howard elected the "spousal continuation" option rather than receiving a distribution with regard to Nos. 179442 and 180110, selected Robert Surfield as the primary beneficiary of those contracts upon his own death, and noted that the contingent beneficiary would be "as per will." (Doc. 19-1, ¶¶ 30-31). No further changes were made to either George Howard's will or the two annuity contracts before he passed away on October 15, 2013. (Doc. 19-1, ¶ 32).

On October 30, 2013, after his father's death and upon learning of the changes to the will and beneficiary claim form, Robert Howard sent a letter to American Equity in which he challenged whether his father had the capacity to execute the April 2012 will and the April 2013 beneficiary claim form. (Doc. 19-1, ¶ 33). Since 2013, the Howard brothers and Robert Surfield have been engaged in litigation before the Court of Common Pleas of Cumberland County, Orphans' Court Division, regarding who should inherit George Howard's estate. (Doc. 19-1, ¶ 34). The Howard Brothers and Robert Surfield have also informed American Equity of their

---

[5] The previous will, executed on November 24, 2009, would have left George Howard's estate to the Howard brothers in equal shares in the event that his wife predeceased him. (Doc. 19-1, ¶ 26).

dispute over who should receive the death proceeds from Annuity Contract Nos. 179442 and 180110. (Doc. 19-1, ¶ 35). Upon the request of American Equity, the Orphans' Court has agreed not to determine the proper beneficiary of the annuity contracts in resolving the underlying will contest. (Doc. 26; Doc. 26-2). American Equity has taken no position as to the proper beneficiary of the death proceeds from the two annuity contracts. (Doc. 19-1, ¶ 37).

On March 30, 2015, at the direction of the Court (Doc. 16), American Equity deposited a sum of $79,558.20 into the Court's registry, representing what American Equity states is the highest amount for which it ultimately may be liable in this case. (Doc. 22; Doc. 23; Doc. 24). This amount consisted of the combined value of Annuity Contract Nos. 179442 and 180110 at the time of George Howard's death on October 15, 2013, 3% annual interest from the date of George Howard's death until the date the money was deposited into the Court's registry, and an added benefit of 5.25%. (Doc. 20, at 8). The added 5.25% benefit is intended to compensate for an additional payment that the proper beneficiary would have been entitled to receive by annuitizing Annuity Contract Nos. 179442 and 180110 under the terms of a class action litigation settlement in the United States District Court for the Central District of California. (Doc. 19-1, ¶¶ 39-42). In the instant motion for summary judgment, American Equity now seeks confirmation from the Court that the amount deposited is sufficient to cover the full extent of its potential liability in this case. (Doc. 19).

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of

material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In making this determination, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## III.   JURISDICTION

American Equity brings this action under the federal interpleader statute, 28 U.S.C. § 1335. In considering an interpleader action, the United States Court of Appeals for the Third Circuit has previously noted:

> The equitable remedy of interpleader allows "a person holding property to join in a single suit two or more persons asserting claims to that property." *NYLife Distrib., Inc. v. Adherence Grp., Inc.*, 72 F.3d 371, 372 n.1 (3d Cir. 1995). The plaintiff in an interpleader action is a stakeholder that admits it is liable to one of

the claimants, but fears the prospect of multiple liability. Interpleader allows the stakeholder to file suit, deposit the property with the court, and withdraw from the proceedings. The competing claimants are left to litigate between themselves. The result is a win-win situation. The stakeholder avoids multiple liability. The claimants settle their dispute in a single proceeding, without having to sue the stakeholder first . . . .

*Metro. Life Ins. Co. v. Price,* 501 F.3d 271, 275 (3d Cir. 2007) (internal citations omitted).

Furthermore, a statutory interpleader action typically is litigated in two distinct steps: "during the first, the district court determines whether the requirements of the statute have been met and whether the stakeholder may be relieved from liability; during the second, it actually adjudicates the defendants' adverse claims to the interpleaded fund." *NYLife Distrib., Inc. v. Adherence Grp., Inc.*, 72 F.3d 371, 375 (3d Cir. 1995). In moving for summary judgement, American Equity seeks to conclude the first stage of this interpleader action.

Under the statutory interpleader provision, district courts have subject matter jurisdiction over an action "if there is 'minimal diversity' between two or more adverse claimants, and if the amount in controversy is $500 or more."[6] *Price*, 501 F.3d at 275. "Minimal diversity" is met when "[t]wo or more claimants, of diverse citizenship . . . [,] claim to be entitled to [the amount in controversy]." 28 U.S.C. § 1335(a). Here, the Claimants meet the interpleader statute's "minimal diversity" requirement, as Robert Howard is a citizen of Montana while Robert Surfield is a citizen of Pennsylvania. (Doc. 19-1, ¶¶ 4, 8). This action also meets the $500 amount in controversy requirement, as American Equity believes it is liable

---

[6] Rule 22 of the Federal Rules of Civil Procedure provides an alternative method of bringing an interpleader action in federal court. However, Rule 22 differs from statutory interpleader in that rule-based interpleader does not provide an independent basis for subject matter jurisdiction. *See NYLife Distrib., Inc.*, 72 F.3d at 372 n.1.

for a sum of $79,558.20. (Doc. 20, at 10). Accordingly, the basic requirements for subject matter jurisdiction under the interpleader statute are satisfied in this action. *See* 28 U.S.C. § 1335(a)(1).

In addition to the "minimal diversity" and amount in controversy requirements under the interpleader statute, courts also impose other prerequisites before concluding that the exercise of jurisdiction is appropriate. These additional requirements include determining whether: (1) the stakeholder really is faced with adverse claims; (2) the amount of money (or size of the bond) that the stakeholder deposited with the court is sufficient to cover the full extent of the stakeholder's potential liability; and (3) the stakeholder has clean hands and is not responsible for the controversy. *See generally* 7 Wright, Miller & Kane, Federal Practice & Procedure § 1714 (3d ed. 2001). Here, the Court is satisfied that each additional requirement is met.

A stakeholder seeking interpleader must have "a bona fide fear of adverse claims." *CNA Ins. Cos. v. Waters*, 926 F.2d 247, 251 (3d Cir. 1991). However, "jurisdiction in interpleader is not dependent upon the merits of the claims of the parties interpleaded, and a plaintiff can maintain the action even though he believes that one of the claims is valid and the other, or others, without merit." *Bierman v. Marcus*, 246 F.2d 200, 202 (3d Cir. 1957). In the case at bar, it is clear that American Equity possesses a bona fide fear of adverse claims. Robert Howard and Robert Surfield have each entered appearances before the Court and both claim that they are the proper beneficiary to the death proceeds from the Howards' annuity contracts. (Doc. 6; Doc. 17). Moreover, American Equity's fears are further justified by the fact that the claimants already have spent significant time litigating a related dispute over the Howards' estate before the Court of Common Pleas of Cumberland County, Orphans' Court Division. Accordingly, the Court concludes that American Equity has a legitimate fear of vexation of multiple claims.

An additional prerequisite to statutory interpleader is that the stakeholder must deposit with the court either the full amount of money for which it may be liable or a bond representing that sum. *See* 28 U.S.C. § 1335(a). Here, neither Robert Howard nor Robert Surfield allege that the amount deposited be American Equity is insufficient. Furthermore, American Equity provides a detailed accounting of how it determined that the sum of $79,558.20 constituted the highest amount for which it may be liable. (Doc. 20, at 7-8). Finding no error in this explanation, the Court concludes that the deposit posted by American Equity is sufficient to cover the highest amount for which it may be liable in this case.

Lastly, as a general rule, "a party seeking interpleader must be free from blame in causing the controversy." *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 263 (3d Cir. 2009). "Because interpleader is an equitable proceeding, it is subject to dismissal based on equitable doctrines such as laches." *U.S. Fire Ins. Co. v. Asbestospray, Inc.*, 182 F.3d 201, 208 (3d Cir. 1999). Neither of the two remaining claimants in this action allege that interpleader should be denied because of unclean hands. In conducting its own review, the Court also does not find any cause to believe that American Equity is somehow at fault for causing this dispute. Accordingly, the Court is satisfied that American Equity brought this action with clean hands.

Given that each jurisdictional prerequisite to interpleader is fulfilled, the Court recommends that the exercise of subject matter jurisdiction over this action is proper pursuant to 28 U.S.C. § 1335.

## IV.   DISMISSAL OF AMERICAN EQUITY FROM THE CASE

As a final matter, the Court must determine whether it is now appropriate to dismiss American Equity from these proceedings. Upon satisfying the jurisdictional prerequisites of interpleader, "the law normally regards the plaintiff as having discharged [its] full

responsibility" in the proceeding. *Francis I. du Pont & Co. v. Sheen*, 324 F.2d 3, 5 (3d Cir. 1963). However, one exception to this general rule is that "where a claimant brings an independent counterclaim against the stakeholder, the stakeholder is kept in the litigation to defend against the counterclaim, rather than being dismissed after depositing the disputed funds with the court." *Hovis*, 553 F.3d at 264. In light of the stipulation entered into the docket by American Equity and Robert Surfield, it is clear in the case at bar that American Equity does not face any counterclaims that would prevent it from being dismissed from this litigation. (Doc. 29).

Although he did not file a brief in opposition to American Equity's summary judgment motion, Robert Howard noted in his answer that he "would prefer American Equity remain involved" in order to make the discovery process easier. (Doc. 6, at ¶ 51). To the extent that Robert Howard's statement may be construed as opposing the dismissal of American Equity from the case, this Court does not believe that Howard's concerns warrant keeping American Equity on as a party. *See generally* 28 U.S.C. § 2361 (granting district court discretion to discharge the stakeholder in interpleader actions). The Federal Rules of Civil Procedure provide sufficient means for Howard to conduct discovery of a non-party. *See, e.g.,* Fed. R. Civ. P. 30; Fed. R. Civ. P. 45. Given this fact, the Court believes that dismissing American Equity from this action would not harm Robert Howard. Dismissal of American Equity is therefore recommended because it is consistent with the interpleader statute and the effective administration of justice.

## V.   RECOMMENDATION

Based on the foregoing, it is recommended that:

1. Plaintiff-Stakeholder American Equity's motion for summary judgment on its complaint for interpleader (Doc. 19) be **GRANTED**;

2. American Equity be **RELEASED WITH PREJUDICE** from any further

liability to Defendant-Claimants Dennis Howard, Robert Howard, and Robert Surfield with regard to American Equity Annuity Contract Nos. 113775, 147133, 174894, 179442, and 180110;

3. Defendant-Claimants are enjoined from instituting or prosecuting any proceeding in any state or United States court affecting Annuity Contract Nos. 113775, 147133, 174894, 179442, and 180110 pursuant to 28 U.S.C. § 2361;

4. American Equity be **DISMISSED** as a party to this action, and terminated from the caption of the complaint; and

5. The case be remanded to the undersigned for further proceedings.


**BY THE COURT:**


**Dated: December 29, 2015**          *s/ Karoline Mehalchick*
                                      **KAROLINE MEHALCHICK**
                                      **United States Magistrate Judge**

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

AMERICAN EQUITY INVESTMENT
LIFE INSURANCE COMPANY,

          Plaintiff,

    v.

ROBERT HOWARD, et al.,

          Defendants.

CIVIL ACTION NO. 1:15-CV-00043

(KANE, J.)
(MEHALCHICK, M.J.)

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **December 29, 2015**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: December 29, 2015**

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**